SALEM LAFLIN, Plaintiff-Appellant, *v.* ESTATE OF DOROTHY C. MILLS, Deceased, Defendant-Appellee.

First District (3rd Division)   No. 76-171

Opinion filed September 14, 1977.

John C. Castanes and Donald Schultz, both of Chicago, for appellant.

R. Ben Perkins and Ginsburg & Ginsburg, both of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
The plaintiff, Salem Laflin, brought this action against the defendant, the estate of Dorothy C. Mills, to recover damages for personal injuries allegedly caused by the negligent conduct of the decedent, Dorothy C. Mills.

The facts upon which this action was instituted are largely uncontroverted. On March 11, 1974, Dorothy C. Mills was killed in a fire in her apartment on the 10th floor of the building at 5650 North Sheridan Road in Chicago. The decedent was found by the firemen lying face up in her bed and was pronounced dead on arrival at Weiss Memorial Hospital. The fire was confined to the bed in the decedent's apartment. Lieutenant Jaros, of the Chicago Fire Department, investigated the fire. He determined that the fire had begun in the decedent's bed; however, he never examined the mattress since it had been removed from the room prior to his arrival. Jaros stated in a deposition that his examination of the Mills' apartment revealed that the fire started in the mattress on the bed and that the bed was the only area that suffered fire damage. No external injuries were found on the body of the decedent. Jaros found no evidence of a defective lamp or electrical short circuit which could have caused such a fire. Based upon this information, he stated in a deposition that the "* * * probable cause was smoking material."

Laflin also rented an apartment on the tenth floor of building at 5650 North Sheridan Road. His apartment was so arranged that the front door to the apartment and the door to the bedroom were at opposite ends of a hallway; this hallway was approximately 12 or 13 feet long and 5 feet

wide. In a second hallway, leading into the living room directly off the hallway from which one entered the apartment, was a chair upon which the plaintiff had always left his coat when he returned from work in the evenings. The bathroom also opened onto the hallway leading from the front door in such a way that the light from the bathroom would also illuminate the hallway.

At the time of the fire in the decedent's apartment, Laflin was asleep in this bedroom. He and his wife were awakened at approximately 3:30 a.m. by the Chicago firemen who pounded on their door and rang their doorbell, and who advised them to leave their apartment because the building was on fire. Laflin immediately told his wife to get her coat which was in the bedroom closet. After switching on the lamp in the bedroom and the light in the bathroom, Laflin left the bedroom and went to get his coat from the chair in the hallway leading into the living room. At the time he was dressed in his underwear and was barefoot. Laflin does not know if he tripped or bumped into the chair. He grabbed the arm of the chair and his leg hit the sharp edge of the chair. Although he attempted to retain his balance, he fell, pulling the chair on top of him.

Several minutes after Laflin fell, his wife opened the door of the apartment. It was only then that smoke began to enter the apartment. At that point, the firemen informed Laflin and his wife that the fire was under control and that they would not have to leave their apartment.

On July 12, 1974, Laflin filed a claim against the estate of Dorothy C. Mills to recover damages suffered as a result of his fall, and simultaneously, filed a demand for a jury trial. The claim was transferred from the Probate Division to the Law Division of the Circuit Court of Cook County. Subsequently, the plaintiff was allowed to file an amended complaint, which the defendant then answered. The defendant then filed a motion for summary judgment, supporting the motion with the deposition of Salem Laflin and with the investigation report of the Chicago Fire Department on the cause of the fire in the decedent's apartment. Laflin filed a motion in opposition to the defendant's motion for summary judgment which also had the fire department's investigation report appended. After a hearing, the Circuit Court of Cook County granted the motion of the defendant and the plaintiff now appeals.

■■ On appeal, we must determine whether the defendant's motion for summary judgment was properly granted. Summary judgment is proper where, from the pleadings, deposition and admissions on file together with any affidavits and exhibits, it is evident that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1975, ch. 110, par. 57(3); *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) An issue may be resolved as a matter of law only if all reasonable minds would be

compelled to reach the same conclusion. (*Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440; *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.) On appeal, Laflin raises four issues which he asserts present questions of fact which must be resolved by a jury: (1) whether Laflin has sufficiently established an act or omission on the part of the decedent as to having caused the fire in her apartment; (2) whether the injury sustained by the plaintiff was proximately caused by the decedent's negligence; (3) whether the injury sustained by the plaintiff was foreseeable, and (4) whether Laflin was guilty of contributory negligence.

Laflin argues from the position that since the fire occurred on premises which were within the exclusive control of Mills, the facts related to the occurrence are peculiarly within the knowledge of the defendant and thus the burden is upon the defendant to show that the fire did not occur as a result of the decedent's negligence. The defendant, on the other hand, argues that the plaintiff's allegations as to Mills' negligence constitute mere conjecture and thus are insufficient to establish any question of fact.

■■■ Negligent conduct may be proven with circumstantial evidence provided that the inferences drawn from such evidence are reasonable. (*Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 356 N.E.2d 445.) An inference of negligence cannot be established on inferences which are merely speculative in nature. (*Shramek v. General Motors Corp., Chevrolet Motor Division* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244.) From the evidence presented by Laflin, we believe that a jury could reasonably conclude that the fire was caused by Mills' negligent conduct.

The investigation of the origin of the fire conducted by the Chicago Fire Department found that the fire was confined to the area around the decedent's bed. Other possible causes of such a fire were eliminated after investigation and, although no evidence of smoking materials was recovered from around the bed, there was other evidence that Mills was a smoker. Of course, the trier of fact is not compelled to accept the conclusion of the fire department investigation that the cause of the fire was probably smoking material, but this conclusion may be considered by it and weighed as an expert opinion. Thus, we believe that there exists a genuine issue of material fact as to the decedent's negligent conduct.

In argument, the parties treat the next two issues—proximate cause and foreseeability—together. Laflin first argues that the decedent's negligent conduct placed him in a state of peril so that the injuries he suffered can be deemed to have been proximately caused by the decedent's negligence. Laflin expresses the belief that the circuit court's decision to grant the summary judgment, in all probability, turned upon the question of proximate cause; however, because Laflin feels that the injury he suffered was clearly foreseeable, he suggests that the circuit court's

conclusion was erroneous. The defendant suggests that the injuries suffered by Laflin were proximately caused by Laflin's independent decision to evacuate his apartment. However, Laflin was awakened by the Chicago firemen who pounded on his door, rang his doorbell and advised him to leave his apartment because the building was on fire. The defendant argues that no state of peril existed at the time Laflin was hurt and that it was not foreseeable that Laflin would trip over an object over which he had exclusive control. The fire, the defendant believes, merely caused a condition which permitted other causal agencies to act.

The question of the role of foreseeability in the analysis of a cause of action in negligence has produced one of the most persistent debates in negligence law. (See Prosser, Torts, §43 at 250 (4th ed. 1971).) Foreseeability has been considered by the courts as a facet of both the duty element (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250; *Barnes v. Washington*) as well as the causation element (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74) of an action in negligence.

In *Renslow* the supreme court considered the question of whether a child, not conceived at the time negligent acts were committed against its mother, has a cause of action against the hospital for its injuries resulting from the hospital's negligent conduct. The court found that such a cause of action existed, through an analysis of the duty owed by the hospital to the child. The court first emphasized the fact that while foreseeability is a facet of the duty element, the two concepts are not co-extensive; the extension of a duty, they noted, also depends upon the dictates of sound social policy. However, the court went on to note that while several jurisdictions had decided similar issues utilizing a causation analysis, they believed that a duty analysis was more appropriate:

> "We are aware that two recent cases * * * have focused upon causation, rather than upon traditional concepts of duty, in permitting a cause of action based on wrongful conduct prior to the plaintiff's conception * * * It has been aptly observed, however, that '(c)ausation cannot be the answer; in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world. Any attempt to impose responsibility on such a basis would result in infinite liability for all wrongful acts, which would "set society on edge and fill the courts with endless litigation." ' (Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 24 (1953).) Thus, policy lines, to some extent arbitrary, must be drawn to narrow an area of actionable causation. We see no inherent advantage to discarding the policy lines, defined traditionally as 'duty,' in favor of new policy lines which would be necessary to circumscribe actionable causation.

We reaffirm the utility of the concept of duty as a means by which to direct and control the course of the common law * * *." (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.)

The foreseeability requirement serves as a limitation upon the liability of a defendant for the consequences of his negligent act; thus, while foreseeability has no relevance to the question of causation (Prosser, Torts §43, at 250 (4th ed. 1971); Green, *Foreseeability in Negligence Law*, 61 Colum. L.J. 1401 (1961)) it does have relevance to the duty issue. Therefore, we believe that the issue of whether Laflin's injuries were foreseeable is best considered within the context of duty.

■■  A duty is an obligation imposed by the law upon a person which requires that person to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Barnes v. Washington.*) It exists as a result of the particular relationship between the parties (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307) and is a question of law to be resolved by the court. (*Cunis v. Brennan.*) The decision to impose a duty turns in part upon the probability or foreseeability that a defendant's negligent conduct will result in harm to the plaintiff, but also upon the desirability in terms of social policy of the extension of such a duty. (*Renslow v. Mennonite Hospital.*) The creation of a legal duty requires more than a mere possibility of occurrence (*Cunis v. Brennan*) but it is not necessary that the exact injury be foreseen.

■■ ■  Applying these principles to the present situation, we believe that it is obvious that Mills owed a duty to Laflin to protect him from the unreasonable risk of injury from fire. Considering the hazardous nature of fire and the proximity of Laflin's apartment to that of Mills, a fire in Mills' apartment exposed Laflin to a severe risk of injury. Furthermore, we feel that it was reasonably foreseeable that, upon learning of a fire Laflin would attempt to leave his apartment (see *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 285 N.E.2d 217; *Avedisian v. Admiral Realty Corp.* (1960), 63 N.J. Super 129, 164 A.2d 188) and that in his haste to escape he would stumble over an object in his apartment.

■■  The question of whether the decedent's negligence caused Laflin's injury remains a question of fact for the jury to determine. (Prosser, Torts §45, at 289 (4th ed. 1971).) We believe that there exists sufficient evidence to raise a material question of fact as to the causation question. We do not accept the defendant's argument that the fire only created a condition within which a subsequent causal agency acted to cause Laflin's injury. To constitute a sufficient intervening cause of an injury, the intervening action must not be foreseeable (*Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d

19, 310 N.E.2d 9) and since we have already determined that Laflin's activities in leaving his apartment were foreseeable, we cannot accept the defendant's argument.

The final issue which Laflin suggests which raises a question of fact is whether the evidence demonstrates that he was guilty of contributory negligence. Again, the existence of contributory negligence is a question of fact for the jury. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.) We believe that reasonable minds could differ as to the conclusion of whether the plaintiff was guilty of contributory negligence.

■■ There is evidence which would support a finding of contributory negligence. The light from the lamps in both the bathroom and the bedroom illuminated the hallway leading from the front door, so presumably Laflin's vision was not totally impaired. Likewise, even assuming that the placing of a chair in a narrow hallway in an apartment does not constitute negligent conduct, the fact that the chair had been in the same location for the past 10 years seems to suggest that Laflin was at least a little careless in preparing to evacuate his apartment. At the same time, it must be realized that Laflin had been awakened in the middle of the night by firemen who advised him to leave his apartment because the building was on fire. It is a fundamental principle of negligence law that when judging the quality of an individual's conduct the standard to which an individual will be held will be influenced by the circumstances within which that individual is acting. (*Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381.) Thus, where an individual finds himself in a perilous position caused by an agency beyond his control, he need not exercise the same degree of coolness, self-possession and judgment necessary under ordinary circumstances. He must be judged by the standard of conduct of a prudent person acting under similar circumstances. (*Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 194.) Hence, we do not believe that the evidence is such that the contributory negligence issue can be determined as a matter of law.

Since we have found the existence of questions of fact which preclude the defendant from being entitled to judgment as a matter of law, we hold that the circuit court's order was entered in error. Therefore, the order of the circuit court of Cook County granting the defendant's motion for summary judgment is reversed and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

McNAMARA and JIGANTI, JJ., concur.