

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00370-CV

———————————————————

MICHAEL LOWE, Appellant

V.

AMERICAN AIRLINES, INC. AND TAMIKA BARKERS, Appellees

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-333908-22

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

This case arises from the misidentification of Appellant Michael Lowe as the suspect in a burglary that occurred at DFW Airport (the Airport). Lowe was arrested for the burglary and spent seventeen days in a New Mexico jail before law enforcement determined that he was not the proper suspect and dropped the charges against him. Lowe sued Appellants American Airlines, Inc. (AA) and Tamika Barkers, a former AA security employee, for their alleged involvement in his misidentification, pleading various negligence claims and claims for false arrest and imprisonment and ratification. AA and Barkers moved for traditional and no-evidence summary judgment, and the trial court granted their motion. Lowe appeals from that judgment. We will affirm.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

The material facts of this case are unfortunate and largely undisputed.[1] In May 2020, an unknown male burglarized a store inside the Airport. Airport police officer Juan Torres investigated the burglary and viewed video-surveillance footage in an attempt to identify the suspect. Based on timestamps from the footage, Torres concluded that the suspect had boarded an AA flight to Reno, Nevada, at 6:29 p.m. Lowe also boarded the flight at that time.

---

[1]We derive all background facts from the summary-judgment evidence submitted by the parties.

Torres then spoke with Barkers—a security specialist with AA's Security Department and a former police officer—and asked her for "identifying information" for the passenger who had scanned his boarding pass at 6:29 p.m. He also sent Barkers screenshots of the alleged suspect as he boarded the flight and informed her that the suspect had been traveling with a companion. Barkers told Torres that she had the information he was seeking but that she could not release it to him unless she was provided a valid subpoena or warrant.[2]

Torres submitted a probable-cause affidavit and search-warrant request, in which he attested that AA had information related to the burglary, namely passenger identification and other records from the flight in question. He described the burglary suspect as a "tall, thin, White or Hispanic male with a short military[-]style haircut, black polo shirt[,] and blue jeans" and stated that the suspect had boarded the flight at 6:29 p.m.

A search warrant issued that broadly commanded law enforcement to search for and seize passenger records, "driver['s] license or identification number[s], dates of birth, telephone number(s), and email address[es]" from AA's premises. Though it

---

[2]AA had adopted internal policies related to the protection of customer information that instructed its employees to keep this information confidential because its disclosure could lead to customer harm. Employees were instructed to follow all relevant data protection laws, provide law enforcement immediate access to data when they presented a subpoena, and to disclose only the minimum amount of data needed to achieve a particular purpose.

referenced Torres's affidavit, the warrant itself was not limited to a specific passenger, boarding time, or flight.

Torres provided the warrant to Barkers and again asked her specifically for the identity of the passenger who had scanned his boarding pass at 6:29 p.m. He did not ask for or obtain a more comprehensive set of passenger records, such as a flight manifest or the identification of roughly the ten other passengers who had boarded the plane at or around the same time. In response to this request, Barkers identified Lowe as the passenger in question. She also offered to provide Torres with the name of a companion whom she believed to have been travelling with Lowe, but Torres declined that information.[3] Torres testified at a deposition that AA and Barkers had fully complied with the search warrant.

Torres searched for Lowe in law enforcement databases and obtained additional information about him, including a picture from his 2009 driver's license. He compared this picture to the picture of the burglary suspect from the Airport surveillance footage. Though Lowe's picture did not closely resemble the person from the Airport footage, Torres reasoned that a person's appearance can change over time.

An arrest warrant was issued for Lowe, and he was eventually arrested in New Mexico and jailed for seventeen days. Lowe was then released from jail and, after

---

[3]The record suggests that Lowe had not been travelling with a companion.

4

hiring an attorney and convincing Torres that he had been misidentified as the burglary suspect, his charges were dismissed.

## B. PROCEDURAL BACKGROUND

Lowe sued AA and Barkers, alleging that the conditions in the jail had been so deplorable that they caused him lasting physical and mental injuries. He brought claims for negligence, negligent undertaking, gross negligence, false arrest and imprisonment, and "respondeat superior, agency[,] and ratification." As to the negligence claim, Lowe alleged that Appellees owed him a duty to protect his personal identifying information from disclosure; that Appellees had breached their duty of care by failing to properly comply with the search warrant and by wrongfully producing only Lowe's identifying information in response to the warrant; and that these breaches proximately caused his damages.

As to the negligent-undertaking claim, Lowe alleged that, "to the extent there [was] no duty otherwise recognized under common law," Appellees undertook duties to protect AA's passengers' personal information and to perform law enforcement tasks beyond what was ordinarily required of an airline; that Appellees had developed policies for interacting with law enforcement and protecting AA's passengers' personal information; that Appellees had failed to exercise ordinary care in performing these duties and adhering to these policies; that Lowe had relied upon Appellees' performance of these duties to his detriment; or alternatively, that these

5

failures increased the risks of foreseeable harm to Lowe; and that these breaches had caused his damages.

As to the gross-negligence claim, Lowe alleged that Appellees' acts or omissions in providing only Lowe's name in response to the search warrant involved an extreme risk that he would be arrested or imprisoned; that Appellees knew of those risks and still did not fully comply with the search warrant and its own internal policies; and that these failures led to Lowe's foreseeable harm.

As to the false-arrest-and-imprisonment claim, Lowe alleged that Appellees "willfully participated in acts that would foreseeably result in" his arrest and that Lowe's arrest and detention were without his consent and without legal authority or justification.

Finally, as to the respondeat superior, agency, and ratification claim, Lowe alleged that Barkers had been working within the course and scope of her employment at the time of the alleged acts and had AA's express or implied authority to act; that AA had ratified her behavior and had failed to discipline her for those acts; and that those acts and omissions had proximately caused Lowe's damages and were imputed to AA.

Appellees filed a traditional and no-evidence motion for summary judgment. They argued as follows:

- Traditional summary judgment was appropriate on Lowe's negligence claim because Appellees did not owe him a legal duty; the evidence established that

no breach occurred; and his damages were not proximately caused by the alleged breaches.

- Traditional summary judgment was appropriate on Lowe's negligent-undertaking claim because Appellees did not undertake to perform services necessary for Lowe's protection and AA's internal policies did not create a duty to protect Lowe.

- Traditional summary judgment was appropriate on Lowe's gross-negligence claim because Barkers did not act with an extreme degree of risk or conscious indifference and because AA did not ratify or negligently hire, train, or retain Barkers.

- Traditional summary judgment was appropriate on Lowe's false-arrest-and-imprisonment claim because Lowe could neither establish that he was willfully detained by Appellees nor that his arrest and detention occurred without authority of law.

- Traditional summary judgment was appropriate on Lowe's ratification claim because "everyone involved, including [AA], was unaware that a misidentification occurred until many months later, [thus Lowe could not] establish that [AA] possessed full knowledge of, and therefore[] ratified[,] Barkers's acts by failing to disavow them."

- No-evidence summary judgment was appropriate on Lowe's gross-negligence claim because no evidence supported any element of that claim.

- No-evidence summary judgment was appropriate on Lowe's ratification claim because no evidence supported any element of that claim.

Lowe responded, raising substantially the same arguments as he raises on appeal. At a hearing on Appellees' motion, the trial court made the following oral pronouncement:

> [T]he Court's experience as a federal prosecutor for many years shapes the analysis. Specifically, the case and I don't have the cause number -- United States versus Ledezma-Cepeda, Ledezma-Compano, and Cepeda-Cortes, that this judge prosecuted, where specifically a search warrant

7

was served upon a tracking company -- the search warrant asked for a specific tracking information, and the company responded: Do you want the additional six trackers attached to this? That solved that case. What plaintiff is asking for, even assuming the facts as plaintiff has laid them out, is that when someone served with a search warrant believes it has information that would be helpful to law enforcement, they would not provide it; they would simply give the black letter of what's requested. And I'm not saying that I find that that's not what was given, but that's the argument that counsel is giving is that there should be no further effort on the part of someone served with a search warrant. The Court finds that that is a horrible policy decision to be made and that there is no duty -- I mean, I find just as a general rule that there is no duty on the part of American Airlines as it relates to that. But even if, factually, they did go that extra step that, that for policy reasons, we, as a society, want that policy to be put into effect. Obviously, the Second Court may disagree with me. I assume that this will be appealed. I just wanted to put that on the record.

The trial court granted Appellees' motion without indicating the grounds upon which it relied. Lowe moved for reconsideration and new trial, which the trial court denied. Lowe appealed.

## II. STANDARDS OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause

8

of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could

not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## III. DISCUSSION

Lowe raises seven issues on appeal: (1) traditional summary judgment was improper as to his negligence claim, (2) traditional summary judgment was improper as to his negligent-undertaking claim, (3) traditional summary judgment was improper as to his gross-negligence claim, (4) traditional summary judgment was improper as to his ratification claim, (5) no-evidence summary judgment was improper as to his gross-negligence claim, (6) no-evidence summary judgment was improper as to his ratification claim, and (7) the trial court erred by granting summary judgment based on its personal experience as a prosecutor rather than the summary-judgment evidence, and this error also showed bias.[4]

### A. NEGLIGENCE CLAIM

In his first issue, Lowe argues that the trial court erred by granting Appellees' traditional summary judgment on his ordinary negligence claim because fact issues existed regarding the element of duty. In his view, Appellees owed him a duty "to

---

[4]Lowe does not challenge the trial court's granting of summary judgment as to his false-imprisonment claim.

10

handle [his] personal information in a reasonably prudent manner and not to use it to falsely identify him as a criminal suspect." Appellees contend that the law is well settled that no duty exists to hold a private citizen liable for the negligent misidentification of a criminal suspect. We agree with Appellees.

To prove negligence, a plaintiff must establish duty, breach, and damages proximately caused by that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). "Whether a duty exists is a threshold inquiry and a question of law: liability cannot be imposed if no duty exists." *Id.* In determining whether the defendant was under a duty, we consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct; the magnitude of the burden of guarding against the injury; the consequences of placing the burden on the defendant; and whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017). "The question is whether a duty should be imposed on a defined class of cases, not whether the facts of the case at hand show a breach." *Id.*

The heart of Lowe's argument is that Appellees breached a duty to not negligently misidentify him as the suspect in the burglary. But Lowe does not point to a single case in any jurisdiction to support that such a duty exists. Indeed, courts in this state and across the nation have routinely rejected negligent misidentification as a

11

recognized class of claims permitting recovery.[5]  *See, e.g.*, *Walgreens v. McKenzie*, 676 S.W.3d 170, 180 (Tex. App.—Houston [14th Dist.] 2023, pet. filed) (holding that plaintiff could not plead ordinary negligence claim based on false accusations of a crime); *Smith v. Sneed*, 938 S.W.2d 181, 184–85 (Tex. App.—Austin 1997, no pet.) ("We therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing."); *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex. App.—El Paso 1996, writ denied) (holding that defendant bank did not owe a duty to the innocent plaintiff based on information bank had supplied to law enforcement that aided in plaintiff being wrongly indicted for embezzlement); *Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73–74 (Tex. App. Corpus Christi–Edinburg 1991, writ denied) ("Thus, there is no recovery in tort for damages caused by an incorrect, but not malicious prosecution."); *see also Dayton Hudson Corp. v. Eldridge*, 742 S.W.2d 482, 487 (Tex. App.—Dallas 1987, writ denied) (holding in a shoplifting case that store did not owe a duty to police officer—who had been sued by wrongly accused plaintiff—"to convey all the relevant information it knew or to convey accurately the relevant information it knew"); *cf. Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 511 (Tex. 2002) ("But we decline to

---

[5]For other jurisdictions, see, for example, *Campbell v. City of San Antonio*, 43 F.3d 973, 979 (5th Cir. 1995) ("[W]e are unaware of[ ] any Texas authority holding that [the plaintiff] has a cause of action . . . for . . . a merely negligent misidentification."); *Morris v. T.D. Bank*, 185 A.3d 215, 220 (N.J. App. Div. 2018) (collecting cases from other jurisdictions); *Foley v. Univ. of Dayton*, 81 N.E.3d 398, 401–02 (Ohio 2016) (same); *Jaindl v. Mohr*, 541 Pa. 163, 167 (1995) (same).

hold that negligently providing inaccurate or incomplete information to legal authorities will make a reporting party liable for false imprisonment.").

Accordingly, a wrongly accused plaintiff cannot circumvent the stringent standards for recovery of an intentional tort such as false imprisonment or malicious prosecution by pleading negligence claims based on the same facts. *See Charlie Thomas Chevrolet, Ltd. v. Martinez*, 590 S.W.3d 9, 16 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (collecting cases); *Smith*, 938 S.W.2d at 185 (same). The plaintiff is left instead to redress his injuries through intentional-tort claims, such as wrongful imprisonment, defamation, intentional infliction of emotional distress, or malicious prosecution. *See Walgreens*, 676 S.W.3d at 180; *Charlie Thomas Chevrolet, Ltd.*, 590 S.W.3d at 16; *Smith*, 938 S.W.2d at 185; *see also Rodriguez*, 92 S.W.3d at 511 ("And while we recognize that Wal–Mart could expose its innocent customers to the serious risk of arrest by not carefully adhering to its policies and procedures governing the receipt and acceptance of its customers' checks, those customers, though, will have to seek a remedy through other avenues such as defamation, assuming all necessary elements are shown.").

Our sister court in *Smith* explained the rationale behind this jurisprudence:

> There is no guarantee in our society that only guilty persons will be accused and arrested. *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695 (1979). Except in cases for which malicious prosecution is a viable remedy, a person wrongfully accused of a crime must bear a risk of being subjected to prosecution. Otherwise, those who suspect wrongful activity may be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of lengthy and expensive litigation. *See* Fowler V. Harper, *Malicious Prosecution, False Imprisonment and Defamation*, 15 Tex. L. Rev. 157,

13

168 (1937). For these reasons, the balance of factors weighs heavily against the wrongly accused. It is unfortunate that this balance may sometimes result in "something less than natural justice." *See Louis v. Blalock,* 543 S.W.2d 715, 719 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.). Yet, allowing the accused to recover in negligence poses too great a disincentive for people to cooperate freely with law enforcement officials. To hold, as Smith would have us do, that Sneed's negligence is actionable would in substance convert the tort of malicious prosecution to one of negligent prosecution. We therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing.

*Smith*, 938 S.W.2d at 184–85 (cleaned up).

In light of this overwhelming precedent, we cannot conclude that Appellees owed Lowe a duty to not misidentify him as a criminal suspect. This is particularly true under the facts of this case where Barkers was obligated by a search warrant to comply with Torres's specific requests for information. To hold otherwise would subject private citizens facing search warrants to a proverbial Catch-22: refuse to comply with the warrant and face criminal liability, *see* Tex. Penal Code Ann. § 38.15 (interfering with public duties), or comply and risk civil liability if the provided information leads to the prosecution of an innocent person. Accordingly, because Appellees owed Lowe no duty as a matter of law, we hold that the trial court did not err by granting summary judgment on his negligence claim and overrule his first issue.

## B. NEGLIGENT-UNDERTAKING CLAIM

In his second issue, Lowe argues that the trial court erred by granting traditional summary judgment on his negligent-undertaking claim. He contends that

14

fact issues exist as to whether a duty was imposed on AA (where one does not normally exist) due to the actions it took to protect his information from disclosure. Appellees argue, among other things, that no such duty arose in this case because Barkers disclosed Lowe's information to law enforcement in response to a search warrant. We agree with Appellees.

The essential elements of a negligent-undertaking claim are (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and (3) either the plaintiff relied upon the defendant's performance, or the defendant's performance increased the plaintiff's risk of harm. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000). As with every negligence case, the threshold inquiry in a negligent-undertaking case is whether a duty exists. *M.A. Mortenson Co. v. Shelton*, No. 02-19-00435-CV, 2021 WL 2253299, at *3 (Tex. App.—Fort Worth June 3, 2021, pet. denied) (mem. op.). The critical question concerning the duty element of a negligent-undertaking theory is whether a defendant undertook to protect an individual so as to require the imposition of a duty where one otherwise would not exist. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013); *Vance v Hurst Joint Venture LP*, 657 S.W.3d 141, 156 (Tex. App.—El Paso 2022, no pet.).

Lowe argues that AA undertook a duty to protect its passengers' personal information by taking possession of that information and then implementing policies and procedures to guard it from harmful disclosure. It is true that the summary-

15

judgment evidenced showed that AA had adopted broad confidentiality policies and procedures to protect its passengers' information. For instance, AA employees were instructed to keep customer information confidential and to disclose only the minimum amount needed to effectuate the purpose at hand.

However, the allegedly negligent disclosure pleaded by Lowe is that Barkers provided his confidential information to Torres after he presented her with a warrant. There is no evidence that AA undertook a duty to protect passenger information from disclosure to law enforcement when presented with a valid search warrant. Nor do we see how AA could undertake this duty even if it desired to. Indeed, AA instructed its employees to comply with all relevant data protection laws and to give law enforcement immediate access to data when provided with a subpoena.[6] On this record, even when the evidence is viewed in the light most favorable to Lowe, there is no evidence to support the contention that AA undertook a duty to protect his personal information from law enforcement. We hold that the trial court did not err by granting summary judgment on Lowe's negligent-undertaking claim and overrule his second issue.

---

[6]We see no material difference under the circumstances between whether law enforcement sought information via a subpoena or search warrant, and Lowe does not quibble over this issue.

## C. GROSS-NEGLIGENCE AND RATIFICATION CLAIMS

With his third and fourth issues, Lowe argues that the trial court erred by granting traditional and no-evidence summary judgment on his gross-negligence claim. However, it is well established that a finding of ordinary negligence is a prerequisite to a finding of gross negligence and that without a legal duty there can be no gross negligence. *Rayner v. Claxton*, 659 S.W.3d 223, 258 (Tex. App.—El Paso 2022, no pet.); *Mata v. Argos USA LLC*, No. 06-21-00089-CV, 2022 WL 1193671, at *8 (Tex. App.—Texarkana Apr. 22, 2022, no pet.) (mem. op.); *Seaway Prod. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 659 (Tex. App.—Fort Worth 2004, no pet.). Because we have held that Lowe's negligence claim fails for lack of duty, it necessarily follows that his gross-negligence claim also fails as a matter of law. We hold that the trial court did not err by granting summary judgment on Lowe's gross-negligence claim and overrule his third and fourth issues.

With his fifth and sixth issues, Lowe argues that the trial court erred by granting traditional and no-evidence summary judgment on his ratification claim because fact issues remained as to whether AA had ratified Barkers's grossly-negligent conduct such that her gross negligence was imputed to AA. Having held that Lowe's gross-negligence claim fails as a matter of law, so too must his ratification claim, which rests thereon. We hold that the trial court did not err by granting summary judgment on Lowe's ratification claim and overrule his fifth and sixth issues.

## D. TRIAL COURT'S PERSONAL EXPERIENCE

In his seventh and final issue, Lowe contends that the trial court erred by improperly relying on personal experience as a prosecutor outside of the summary-judgment evidence to grant summary judgment on public policy grounds. He claims—without any supporting legal authority—that the trial court's oral pronouncements at the summary-judgment hearing "reveal[ed] a disregard for the actual record evidence in favor of a personal bias." We disagree.

First, there is no indication from the record that the trial court decided the summary judgment on improper grounds or evidence. Summary-judgment motions are decided solely on the written filings of the parties, *see* Tex. R. Civ. P. 166a(c), and it is inappropriate for us to consider the record of the summary-judgment hearing to determine the trial court's reasoning for its decision, *see Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 307 (Tex. App.—Fort Worth 2001, no pet.). When, as here, a trial court's order granting summary judgment does not specify the grounds relied on for its ruling, we will affirm summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Our preceding discussion of Lowe's substantive issues shows that the trial court's granting of summary judgment was not improper on any legal basis, and we do not view the trial court's oral comments at the hearing as presenting a proper or successful challenge to that ruling.

Neither do we view those comments as evidencing a reversible bias against Lowe. "One of the fundamental components of a fair trial is a neutral and detached judge." *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). In the absence of clear proof to the contrary, we presume that the trial court acted without bias or partiality. *De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *3 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.).

In his comments at the summary-judgment hearing, the trial-court judge simply explained his reasoning for determining that no duty existed in this case. In doing so, he noted that his reasoning was informed by his experience as a prosecutor who had juggled the varied interests of law enforcement and private citizens responding to search warrants. His disagreement with Lowe's position did not show animus or bias toward Lowe himself, only a divergence with Lowe's legal position on the issue. Thus, there is no evidence in the record to rebut the presumption that the trial court acted without bias in this case.

For these reasons, we hold that the trial court did not improperly rely on personal experience when it granted summary judgment and that it did not otherwise exhibit bias in this case. We overrule Lowe's seventh issue.

## IV. CONCLUSION

Through no fault of his own, Lowe was subjected to being wrongly arrested and imprisoned for seventeen days. We do not condone injustice. But we cannot ignore the policy that informs our decision and, ultimately, we must follow the law.

19

Accordingly, having overruled all of Lowe's issues on appeal, we affirm the trial court's order granting summary judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 22, 2024